IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOBBIE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 6426 |
| ) | |
| CITY OF JOLIET, DAVID R. MACKLEY, ) | |
| in his official and individual ) | |
| capacity, and RICHARD THOMPSON, ) | |
| in his official and individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

This case is before the court for ruling on plaintiff's (1) motion for leave to file a second amended complaint and (2) Federal Rule of Civil Procedure 56(f) affidavit seeking discovery in order to respond to defendants' motion for summary judgment.  For the reasons explained below, plaintiff's motion for leave to file a second amended complaint is granted in part, denied in part and entered and continued in part and her request for discovery pursuant to Rule 56(f) is granted in part and denied in part.

**BACKGROUND**

In October 2004, plaintiff Bobbie Johnson ("Johnson"),[1] an African-American woman, sued the City of Joliet ("the City"), David R. Mackley ("Mackley"), an inspector with the City's Building Inspections and Permit Department, Richard Thompson ("Thompson"), a property maintenance inspector for the City's Neighborhood Services Division, and Mary Kucharz ("Kucharz"), assistant corporation counsel for the City's Legal Department, for various violations of her constitutional rights. Johnson's claims, as subsequently amended, arise out of the demolition of her garage on October 6, 2002 and an ordinance violation proceeding commenced against her in December 2002 for failing to remove the debris in her yard that resulted from the demolition. More specifically,[2] Johnson alleges that after a car ran into her garage causing structural damage, defendant Mackley directed one of the City's hired demolition contractors to demolish her garage. The garage was demolished and the debris was left in her

---

[1] There is a discrepancy as to whether plaintiff's first name is spelled "Bobbi" or "Bobbie." In both the original and first amended complaints, plaintiff identifies herself as "Bobbi Johnson" in the caption but "Bobbie Johnson" in the body of the complaint. Based on plaintiff's signatures on various pleadings, it is appears that the proper spelling is "Bobbie."

[2] For present purposes, we provide a general factual overview to explain the nature of, and basis for, plaintiff's claims. Plaintiff's factual allegations are more fully set forth in our opinion ruling on defendants' motion to dismiss, Johnson v. City of Joliet, No. 04 C 6426, 2006 WL 1793574, at *1-3 (N.D. Ill. June 27, 2006).

yard. After complaining about the demolition to the City in writing and receiving no response, plaintiff publicly criticized Mackley's actions at the General Council Assembly session in November 2002. Later, on or about December 11, 2002, Thompson and Kucharz commenced an ordinance violation proceeding against Johnson for allegedly failing to remove the debris from her property. According to Johnson, Mackley would not have ordered the immediate demolition of her garage if she were white and, moreover, Thompson and Kucharz instituted the ordinance violation proceeding against her in retaliation for her public criticism of Mackley. Three of Johnson's six claims survived defendants' motion to dismiss: her Monell claim under 42 U.S.C. § 1983 against the City for failure to properly train, supervise and control the individual defendants, her § 1983 claim against Mackley and Thompson for depriving her of equal protection of the laws and her § 1982 claim against the City and Mackley for depriving her of her property rights.

At a status hearing on November 1, 2006, defense counsel informed the court of his intention to file a motion for summary judgment. Defense counsel further informed the court that although Johnson (who did not attend the status hearing) had tendered written discovery to defendants which they had not yet answered, counsel did not believe that the outstanding discovery would interfere with the defendants' motion for summary judgment.

The court thus entered a briefing schedule for the summary judgment motion. Johnson later objected to the briefing schedule, asserting that she needed answers to the discovery she had served in order to defend the summary judgment motion. After the court declined to vacate the briefing schedule, Johnson filed the Rule 56(f) affidavit and the Rule 15(a) motion for leave to file a second amended complaint that are presently before the court.

## DISCUSSION

**A.     Ghost-Writing**

As an initial matter, before addressing Johnson's motions, the court needs to address a serious concern with Johnson's pleadings. Johnson represents that she is acting pro se, yet given the arguments she raises and the language and style of her written submissions, it is obvious to both the court and defense counsel that someone with legal knowledge has been providing substantial assistance and drafting her pleadings and legal memoranda. We suspect that Johnson is working with an unidentified attorney, although it is possible that a layperson with legal knowledge is assisting her. Regardless, neither scenario is acceptable.

If, as we suspect, a licensed attorney has been ghost-writing Johnson's pleadings, this presents a serious matter of unprofessional conduct. Such conduct would circumvent the

requirements of Rule 11 which "obligates members of the bar to sign all documents submitted to the court, to personally represent that there are grounds to support the assertions made in each filing." Ricotta v. California, 4 F. Supp. 2d 961, 987 (S.D. Cal. 1998) (citing Johnson v. Bd. of County Comm'rs for County of Fremont, 868 F. Supp. 1226, 1231 (D. Colo. 1994)); Laremont-Lopez v. Southeastern Tidewater Opportunity Center, 968 F. Supp. 1075, 1078 (E.D. Va. 1997). Moreover, federal courts generally give pro se litigants greater latitude than litigants who are represented by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972). It would be patently unfair for Johnson to benefit from the less-stringent standard applied to pro se litigants if, in fact, she is receiving substantial behind-the-scenes assistance from counsel. Laremont-Lopez, 968 F. Supp. at 1078. As the Ricotta court explained,

> [A] licensed attorney does not violate procedural, substantive, and professional rules of a federal court by lending some assistance to friends, family members or others with whom he may want to share some specialized knowledge. Otherwise, virtually every attorney licensed to practice would be eligible for contempt proceedings. **Attorneys cross the line, however, when they gather and anonymously present legal arguments, with the actual or constructive knowledge that the work will be presented in some similar form in a motion before the Court.** With such participation the attorney guides the course of litigation while standing in the shadows of the Courthouse door.

Ricotta, 4 F. Supp. at 987 (emphasis added) (admonishing attorney for drafting briefs for plaintiff who was supposed to be pro se).

If, on the other hand, a layperson has been assisting Johnson, then that person has engaged in the unauthorized practice of law. As relevant here, "'the practice of law generally includes not only the conduct of litigation and appearances in court, but also the preparation of pleadings and other papers incident to any action or proceeding in any court or other judicial body[.]'" <u>United States v. Johnson</u>, 327 F.3d 554, 561 n.10 (7th Cir. 2003) (citation omitted).

Here, there is no doubt that Johnson has been receiving substantial assistance in drafting her pleadings and legal memoranda. (When asked at her deposition to disclose who was helping her, Johnson reportedly declined to answer and (improperly) invoked the Fifth Amendment.) This improper conduct cannot continue. We therefore order Johnson to disclose to the court in writing the identity, profession and address of the person who has been assisting her by **February 20, 2007**.

**B.  The Court Sua Sponte Dismisses the § 1983 Claim against Thompson**

Turning to the substantive allegations in this case, in reviewing the First Amended Complaint, it has come to the court's attention that there is a fatal flaw in Johnson's § 1983 claim for denial of equal protection (Count II of the First Amended Complaint) as that claim relates to defendant Thompson. To state an equal protection claim under § 1983, a plaintiff must allege

that a state actor discriminated against her based on her membership in a protected class (e.g., race or gender) and did so "with a nefarious discriminatory purpose[.]" Nabozny v. Podlesny, 92 F.3d 446, 453 (7th Cir. 1996). Here, Johnson does not allege that Thompson singled her out based on her race, gender or membership in any other protected group. She alleges only that Thompson initiated the ordinance violation proceeding against her in retaliation for her speaking out about the demolition of her garage.[3] Count II thus does not state a claim against Thompson for denial of equal protection. Although defendants failed to catch this flaw when they previously moved for dismissal, the court now sua sponte dismisses Count II against Thompson. Accordingly, Thompson is no longer a defendant in this case.

**C. Defendants' Summary Judgment Motion and Plaintiff's Rule 56(f) Affidavit**

With Thompson out of the case, the claims that remain are Johnson's Monell claim under § 1983 against the City for failure to properly train, supervise and control the individual defendants, her § 1983 claim against Mackley for depriving her of equal protection of the laws and her § 1982 claim against the City and Mackley for depriving her of her property rights.

---

[3] Johnson's § 1983 first amendment claim against Thompson was dismissed as time-barred. Johnson v. City of Joliet, No. 04 C 6426, 2006 WL 1793574, at *9 (N.D. Ill. June 27, 2006).

Defendants have moved for summary judgment on each of these claims on the ground that Johnson lacks any evidence to support her claims that she was the victim of racial discrimination.[4] More specifically, Mackley contends that he is entitled to summary judgment because he was acting within his emergency powers when he ordered the demolition of Johnson's garage and because Johnson has no evidence that he acted with racial animus or discriminated against her because of her race. In fact, Mackley attests that he did not know Johnson's name, let alone her race, at the time he inspected her garage and ordered its demolition. Similarly, the City asserts that it cannot be liable because Mackley did not discriminate against Johnson and because Johnson lacks any evidence of a municipal custom, policy or practice of discrimination. Johnson has responded with a Rule 56(f) affidavit, attesting that in order to oppose the motion for summary judgment, she needs answers to the discovery she tendered to defendants last October.

We agree that Johnson is entitled to some discovery. Although a litigant may not file suit in order to "use discovery as the sole means of finding out whether [she has] a case[,]" Szabo Food Serv. Inc. v. Canteen Corp., 823 F. 2d 1073, 1083 (7th Cir. 1989), the Federal Rules of Civil Procedure do not preclude

---

[4]/ To be clear, defendants also moved for summary judgment regarding Count II as it relates to Thompson. But given our dismissal of that claim, that portion of the motion for summary judgment is now moot.

lawsuits by plaintiffs who have some factual support for their complaint but require discovery to prove their case. <u>Kraemer v. Grant County</u>, 892 F.2d 686, 690 (7th Cir. 1989). Here, defendants seek summary judgment on the ground that Johnson has no evidence to support her claims. But by ignoring Johnson's discovery requests, defendants have essentially blocked her attempt to gather evidence. It would be unfair to proceed with the motion for summary judgment without giving Johnson any opportunity for discovery.

We will not require defendants to answer all of the discovery Johnson served, however. Rule 26 of the Federal Rules of Civil Procedure gives the court discretion to control the scope of discovery. Here, much of Johnson's discovery is aimed at gathering evidence to support her <u>Monell</u> claims against the City — claims which fail as a matter of law if Johnson is unable to produce evidence to support her racial discrimination claims against Mackley. <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986). Spending time and resources on discovery into the City's policies, patterns and practices seems unnecessary and wasteful at this point. <u>See</u> <u>Lopez v. City of Chicago</u>, No. 01 C 1823, 2002 WL 335346, at *3 (N.D. Ill. Mar. 1, 2002)(staying discovery on <u>Monell</u> claims pending outcome of discovery on claims against individuals). The critical issue is whether there is any evidence that Mackley ordered the demolition of Johnson's garage

because she is African-American. Although Mackley's affidavit unequivocally denies that his decision was based on her race, it would be unfair to accept Mackley's affidavit without first giving Johnson an opportunity to conduct some discovery. Accordingly, we direct Mackley and the City to provide the following information to Johnson no later than **March 7, 2007**.

First, for the five year period preceding the demolition of Johnson's garage (October 6, 1997 through October 6, 2002), defendants must produce any documents relating to citizens' complaints and/or lawsuits alleging that Mackley, in his capacity as inspector for the Building Inspections & Permit Department of the City of Joliet, made decisions about whether to tear down buildings based on the property owner's race. Second, Mackley must answer interrogatories 4, 5 and 8.[5] Third, during her deposition, Johnson testified about a time when a car drove into a building on Cass Street near Herkimer Street, damaging at least part of the building's wall. According to Johnson, that building, unlike her garage, was not immediately torn down. Johnson did not know the address or the owner of the building on

---

[5] Interrogatory 4: "Specifically describe the manner in which structural[ly] damaged buildings are normally assess[ed] for determining whether said structurally damaged building is unsafe to warrant immediate demolition."
Interrogatory 5: "Specifically describe the method used to assess the structural damage to Plaintiff Johnson's garage during the occurrence of October 6, 2002."
Interrogatory 8: "Specifically identify the structural damage to Plaintiff Johnson's 224 South Richards Street property's garage that warranted the authorizing and ordering of the immediate demolition on October 6, 2002."

Cass Street, but she assumed the owner was white. If, after a reasonable inquiry, defendants are able to identify the building on Cass Street that Johnson was referring to, defendants should provide Johnson with any information they have regarding the damage caused to the building, any inspection of the building, the identity of the inspector, and the identity and race of the owner at the time of the incident. Conversely, if defendants are unable to identify the building after a reasonable inquiry, they should notify Johnson accordingly.

After defendants provide the above-described discovery to Johnson, she has until **March 28, 2007** to depose Mackley if she chooses to do so. Defense counsel shall cooperate with Johnson to schedule the deposition in a timely manner. On **April 11, 2007 at 10:30 a.m.**, the parties will appear for status to inform the court what information was discovered. At that time, we shall decide whether any further discovery is warranted.

### D.  Johnson's Motion for Leave to File Second Amended Complaint

Johnson has also filed a motion under Rule 15 of the Federal Rules of Civil Procedure seeking leave to file a Second Amended Complaint. In the proposed Second Amended Complaint, Johnson wants to keep the <u>Monell</u> claim against the City (Count I) and § 1982 property rights violation claim against Mackley and the City (formerly Count III, now Count II), amend her § 1983 equal

protection claim against Mackley (formerly Count II, now Count III), and add a § 1985(3) claim against Mackley and Thompson for conspiring to intimidate and oppress her by instituting false ordinance violation proceedings against her (Count IV). Additionally, Johnson wants to add claims against the City and unidentified police officers for ticketing her second car while it was legally parked, then subsequently towing and impounding the car after she moved it to her backyard. According to Johnson, the police ticketed, towed and impounded her car because of her race and also in retaliation for filing the instant lawsuit against the City. She therefore wants to amend her Monell claim (Count I) against the City to include a claim that the City failed to train the unidentified police officers and add § 1983 claims against the City and unidentified police officers for violating her fourth amendment right to hold property free from unreasonable seizure (Count V) and her fourteenth amendment right to due process and equal protection of the laws (Count VI). Finally, Johnson seeks leave to include a state law tort claim for intentional infliction of emotional distress (Count VII).

Regarding proposed Counts I through III – the Monell claim against the City, and the § 1982 and § 1983 claims against the City and Mackley — Johnson should carefully consider whether she wants to file the Second Amended Complaint as drafted. Unlike the First Amended Complaint in which Johnson alleged that Mackley

was acting <u>within</u> the scope of his employment with the City (<u>e.g.</u>, First Am. Compl. ¶ 6), in the proposed Second Amended Complaint she alleges that he acted <u>in excess</u> of the scope of his employment (<u>e.g.</u>, Sec. Am. Compl. ¶ 6).  But if Mackley was not acting within the scope of his employment, it is unclear how the City could be liable to Johnson.  The City faces liability only if Mackley acted pursuant to a municipal policy, custom or practice.  It strikes us as inconsistent to claim that Mackley was acting pursuant to a municipal policy, custom or practice while acting beyond the scope of his employment.

Johnson also asks for leave to amend her § 1983 equal protection claim against Mackley because she "inaccurately and incompletely" pled the claim before.  Other than the change in the scope-of-employment allegations, the only substantive change we noticed was that Johnson drops Thompson as a defendant in the equal protection count in the proposed Second Amended Complaint — an amendment that is now unnecessary given our dismissal of Thompson.  Perhaps we are overlooking some other substantive change.  But before we decide whether to grant leave to amend the § 1983 equal protection claim, Johnson must inform the court (1) whether she now claims that Mackley acted beyond the scope of his employment, and (2) whether the proposed amended count was intended to make any other substantive change.  Johnson is instructed to file a memorandum answering these questions no

later than **February 28, 2007.**

To the extent Johnson seeks leave to add a conspiracy claim under § 1985(3) (Count IV), her motion for leave to amend is denied because the claim is not viable. <u>Moore v. State of Indiana</u>, 999 F.2d 1125, 1128 (7th Cir. 1993) (leave to amend should be denied if amendment would be futile). In the proposed § 1985(3) count, Johnson alleges that Mackley and Thompson retaliated against her for speaking out at a public meeting. In other words, she alleges that they retaliated against her for exercising her First Amendment rights. But § 1985(3) covers conspiracies to deprive a person of her right to equal protection of the laws. <u>Majeske v. Fraternal Order of Police, Local Lodge No. 7</u>, 94 F.3d 307, 311 (7th Cir. 1996). Because there are no allegations that Mackley and Thompson conspired to commence the ordinance violation proceeding against her because of her race, Johnson's proposed § 1985(3) claim fails as a matter of law. <u>Id.</u> (§ 1985(3) plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [was] behind the conspirators' action").

Johnson also wants to add new claims against the City and unidentified police officers for ticketing, towing and impounding her second car. To the extent Johnson wants to amend her <u>Monell</u> claim (Count I) and add § 1983 claims based on purported violations of her fourth amendment right to hold property free

from unreasonable seizure (Count V) and her fourteenth amendment right to due process and equal protection of the laws (Count VI), we grant her leave to do so. Although defendants argue that the incident relating to Johnson's car has no bearing on issues pertaining to the demolition of her garage, Johnson alleges that her car was impounded in retaliation for this lawsuit. Accepting her allegations as true, the incidents are sufficiently related. Moreover, in the interests of judicial economy, it makes sense to dispose of all of Johnson's claims in one lawsuit.

Johnson may not add her proposed state-law tort claim for intentional infliction of emotional distress, however. To give rise to a claim for intentional infliction of emotional distress, defendants' conduct "must be extreme and outrageous." Public Fin. Corp. v. Davis, 360 N.E.2d 765, 767 (1976). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities." Id. Rather, Illinois courts "essentially restrict[] the tort of intentional infliction of emotional distress to those cases in which defendant's conduct is so abusive and atrocious that it would cause severe emotional distress to a person of ordinary sensibilities." Rudis v. Nat'l College of Ed., 548 N.E.2d 474, 477 (Ill. App. Ct. 1989) (affirming dismissal of complaint). "Whether conduct is extreme and outrageous is judged from an objective standard based on all the facts and circumstances of a particular case." Doe v.

Calumet, 641 N.E.2d 498, 507 (Ill. 1994). Here, even assuming the Joliet police violated Johnson's constitutional rights when they ticketed, towed and impounded her second car, such conduct is not objectively "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency[.]" Public Fin. Corp., 360 N.E.2d at 767.

## **CONCLUSION**

For the reasons set forth above, by February 20, 2007, Johnson must disclose in writing to the court the identity, profession and address of the person who has been helping her draft the pleadings and legal memoranda in this case. Additionally, the court sua sponte dismisses the § 1983 claim against Thompson. Further, Johnson's motion for leave to amend is granted in part, denied in part and entered and continued in part. Before Johnson may file a Second Amended Complaint consistent with this opinion, she first must inform us (1) whether she now claims that Mackley acted beyond the scope of his employment, and (2) whether the proposed amended § 1983 count was intended to make any other substantive changes. Johnson shall file a memorandum answering these questions no later than February 28, 2007. Finally, Johnson's request for discovery pursuant to Rule 56(f) is granted in part and denied in part. Defendants have until March 7, 2007 to provide Johnson with the discovery set forth in Section C above. Johnson then has until

March 28, 2007 to depose Mackley if she chooses to do so.  This matter is set for status on April 11, 2007 at 10:30 a.m.


    DATE:        February 13, 2007

    ENTER:      _____
                  John F. Grady, United States District Judge